1 | Philip R. Weltin, Esq. SBN 46141
2 | Daniel R. Weltin, Esq. SBN 226600
  | WELTIN • STREB & WELTIN LLP
3 | 1432 Martin Luther King Jr. Way
  | Oakland, California  94612
4 | Telephone (510) 251-6060
  | Facsimile   (510) 251-6040
5 |
  | Attorneys for Plaintiff
6 | Frank Schaffner

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK SCHAFFNER,<br><br>Plaintiff,<br><br>v.<br><br>CROWN EQUIPMENT CORPORATION DBA CROWN LIFT TRUCKS; NORTHWEST HANDLING SYSTEMS, INC.,<br><br>Defendants. | Case No. CV-09-00284 SBA<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES TO WRITTEN DISCOVERY AND TO RE-OPEN DEPOSITIONS**<br><br>Date: Sept. 2, 2011<br>Time: 9:30 a.m.<br>Floor: 15<br>Court: G<br><br>*Referred to Hon. Joseph C. Spero* |

---

Notice of Motion and Motion to Compel Further Responses to Written Discovery and to Re-Open Depositions

**TABLE OF CONTENTS**

NOTICE OF MOTION……………………………………………………………………………..1

STATEMENT OF RELIEF SOUGHT…………………………………………………………….1

I. INTRODUCTION……………………………………………………………………………….1

II. STATEMENT OF FACTS……………………………………………………………………..3

      A. Plaintiff's Accident………………………………………………………………………3

      B. Crown's Stand-Up Lift Trucks...……………………………………………………….3

      C. Crown Stand-Up Lift Truck Litigation And Lower Left Leg Injuries……………………4

      D. Plaintiff's Contentions In This Case……………………………………………………4

      E. The Course Of Discovery In This Case……………….................................................4

III. ARGUMENT…………………………………………………………………………………..5

      A. Crown's Discovery Responses Fail To Comply With The Federal Rules………………...5

            1. Crown does not respond to plaintiff's requests as written………………………...5

            2. Crown refuses to produce documents in electronic format, as requested, or
              to produce documents as they are kept…………………………………………..7

            3. Crown ignores its duty to produce documents to the extent a request is not
              overbroad or unduly burdensome…………………………………………………..8

      B. Crown Improperly Asserts The Attorney-Client Privilege, And These Objections
      Must Be Stricken...……………………………………………………………………….9

      C. Crown's Search For And Production Of Documents Is Inadequate And Improper……...10

IV. CONCLUSION……………………………………………………………………………….11

| 1 | | |
|---|---|---|

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Burlington N. & Santa Fe Ry. v. U.S. Dist. Court*, 408 F.3d 1142 (9th Cir. 2005)……………………10

*Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146 (D. Mass. 2009)……………………………7

*DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008)…………………………………………..9

*General Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637 (D. Kan. 2003)…………………………8

*In re Grand Casinos Securities Lit.*, 988 F. Supp. 1270 (D. Minn. 1997)……………………………...10

*Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651 (D. Md. 1997)…………………………...7

*McEuin v. Crown Equip. Corp.*, 328 F.3d 1028 (9th Cir. 2003)………………………………………..4

*Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007 (9th Cir. 2007)…………………………………….10

*Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370 (S.D. Ind. 2009)………………………….......7, 10

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Securities, LLC*,
    2010 U.S. Dist. LEXIS 4546 at 10-13 (S.D.N.Y. 2010)……………………………………..10

*Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173 (D. Utah 2009)…………...10

*St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*,
    198 F.R.D. 508 (N.D. Iowa 2000)……………………………………………………………….9

*Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2000)……………………………………………..7

*United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646 (C.D. Cal. 2007)……………….9

*White v. The Graceland College Ctr. For Prof. Dev. & Lifelong Learning, Inc.*,
    586 F. Supp. 2d 1250 (D. Kan. 2008)……………………………………………………………7

<u>STATUTES</u>

Fed. R. Civ. Proc. 26……………………………………………………………………………………8

Fed. R. Civ. Proc. 34……………………………………………………………………………….passim

Fed. R. Civ. Proc. 37…………………………………………………………………………………..1, 5

<u>OTHER SOURCES</u>

CACI No. 1204…………………………………………………………………………………………..3

CACI No. 1205…………………………………………………………………………………………..3

CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL (The Rutter Group 2010)………………………9

**NOTICE OF MOTION**

Please take notice that on September 2, 2011 at 9:30 a.m. or as soon thereafter as the matter may be heard in the above-entitled court, plaintiff will, and hereby does move this Court for an order compelling defendant Crown Equipment Corp. to provide further responses to written discovery, without objections based on privilege, and that depositions of Crown witnesses be re-opened based on Crown's failure to timely produce documents before or at those depositions. Fed. R. Civ. Proc. 37(a).

**STATEMENT OF RELIEF SOUGHT**

Plaintiff seeks an order compelling defendant Crown Equipment Corp. to provide further responses to written discovery, without objections based on privilege, and that depositions of Crown witnesses be re-opened based on Crown's failure to timely produce documents before or at those depositions. The specific discovery at issue is addressed herein and in plaintiff's Separate Statement.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Plaintiff Frank Schaffner was injured while operating a Crown Equipment Corp. ("Crown") stand-up forklift. Crown calls these forklifts stand-up riders or stand-up trucks. Plaintiff sued Crown for products liability, negligence and breach of warranty. Crown continues to ignore its discovery obligations under the Federal Rules of Civil Procedure, necessitating this motion.

Plaintiff first propounded written discovery on defendant Crown on June 18, 2009, and has been conferring with Crown since September 1, 2009. The parties have conferred in person on numerous occasions as well as on the telephone, and have exchanged voluminous meet-and-confer correspondence, as well as letters to the Court regarding various discovery disputes. After limited briefing on one of those issues, the scope of the forklift models subject to discovery, the Court ordered that the scope of discovery include nearly all Crown stand-up forklift models since 1992. After again meeting and conferring with Crown regarding its compliance with the Court's order, Crown only supplemented its responses after plaintiff sent Crown a draft separate statement in March 2011. Crown served amended responses to much of plaintiff's written discovery on April 21,

2011.  These amended responses do not address most of plaintiff's concerns that were voiced to Crown over the course of nearly two years.

While Crown's improper responses encompass a variety of document requests, as well as several interrogatories, the improprieties can be summarized:

First, Crown refuses to respond to most requests as they are written, instead re-writing the requests to fit its litigation agenda and, as a result, producing a small sliver of the pie of relevant, discoverable documents and data that it holds.  Crown refuses almost entirely to produce records in electronic format, as requested.  To the extent Crown considers certain requests overbroad and unduly burdensome, it ignores its responsibility to respond to the extent the request is not overbroad or unduly burdensome.  These responses do not comply with the Federal Rules of Civil Procedure.  Fed. R. Civ. Proc. 34(b)(2).

Second, Crown continues to assert the attorney-client privilege, though it claimed that no documents are withheld on the basis of privilege, and Crown refuses to provide any form of privilege log or to remove its objections based on privilege.  As a result of Crown's failure to identify privileged documents with particularity and assertion of the privilege where it is inapplicable, Crown has waived the privilege, and it should be stricken from Crown's responses.

Third, Crown engages in an ongoing piecemeal production of documents: failing to conduct an adequate search for relevant documents, and producing other documents responsive to plaintiff's requests months or even years after the documents were due to be produced.  The documents that are produced are not produced in the format or manner in which they are kept, are not labeled, and are disorganized.

As a result of Crown's conduct, plaintiff's investigation of his claims has been severely hampered.  As an example, email directly relevant to this case between Crown and Costco requested in November 2009 was not produced by Crown until July 7, 2011.  As another example plaintiff did not learn that electronic repair and parts data exists from Crown.  Crown denied it had this data.  Plaintiff learned of electronic repair and parts data from Costco.  These are sanctionable discovery tactics.  Either Crown and its counsel made a woefully inadequate search for basic documents or intentionally withheld key evidence.

1    Plaintiff has not had documents necessary to question witnesses until after the depositions of
2 those Crown witnesses.  Further, plaintiff has been unable to ascertain the extent Crown knows of
3 the problems with its stand-up lift trucks and yet refuses to improve the design or warn of the
4 dangers, the extent to which Crown has developed feasible alternatives to its dangerous designs, and
5 the nature of representations Crown has made to its customers – including plaintiff's employer,
6 Costco Wholesale Corp. – regarding the safety of its lift trucks.  CACI Nos. 1204, 1205.  In short, a
7 vast body of relevant evidence has been withheld or produced well after it was due.

8    Plaintiff brings this motion to compel Crown to provide complete responses to written
9 discovery, to search for and produce now all relevant, discoverable documents, and to remove
10 improper objections of privilege from its responses.  Plaintiff further requests that, due to Crown's
11 delayed production of documents, depositions of Crown witnesses be re-opened at Crown's expense
12 so that plaintiff can examine these witnesses based upon all information and documents that plaintiff
13 requested earlier in discovery.

## II. STATEMENT OF FACTS

### A.  Plaintiff's Accident.

Plaintiff Frank Schaffner worked as a forklift operator at Costco Wholesale Corp.'s Mountain View, California warehouse store.  On the morning of April 23, 2007, plaintiff was operating a Crown RC 3000 series stand-up forklift in the freezer aisle.  After dropping off his last pallet he began to back down the aisle.  Plaintiff was headed in the direction of a support beam and attempted to plug the forklift to brake.  Plugging or plug-braking is an accepted method of stopping a Crown stand-up forklift.  Plugging involves reversing the direction of the motors with the joystick controller.  The plugging malfunctioned and the forklift crushed plaintiff's leg against the support beam.  He suffered a complex comminuted tibia-fibula fracture.  Mr. Schaffner has undergone seven operations on his leg.  He will never walk normally or be able to operate a stand-up forklift again.

### B.  Crown's Stand-Up Lift Trucks.

Crown first produced the Crown RC 3000 in 1996.  Crown built the specific forklift plaintiff was using in December 2005.  Crown first produced the RC 3000's predecessor, the RC (also called the 30RC), in 1972.  In 2007, Crown replaced the RC 3000 with the more advanced RC 5500.  All are stand-up forklifts.  They are distinct from more familiar sit-down forklifts in that the operator

3

Notice of Motion and Motion to Compel Further Responses to Written Discovery and to Re-Open Depositions

1  stands.  They have open operator compartments with left foot brakes.  Stand-up forklifts are smaller
2  than conventional forklifts, and are sold by Crown as having exceptional versatility for use in a
3  warehouse, both in aisles and on loading docks.

4  **C.  Crown Stand-Up Lift Truck Litigation And Lower Left Leg Injuries.**

5  Over 500 serious lower left leg injuries have occurred on Crown stand-up forklifts according
6  to Crown's own accident statistics.  These injuries often involve amputation or severe crushing
7  injuries, similar to plaintiff's injury.  According to Crown, it has been sued at least nine times
8  between February 1998 and August 2009 due to lower left leg injuries incurred in accidents
9  involving an RC 3000.  Weltin Decl., Ex. 5 (Crown Resp. Special Interrogatories Set One, No. One
10 (producing "all legal complaints for accidents involving lower left leg injuries resulting from" RC
11 3000 accidents with fixed objects or other vehicles from February 1998 to August 2009)).  Punitive
12 damages have been awarded to plaintiffs against Crown, including in a case arising, like this one,
13 from the lower left leg crush injury of a Costco forklift operator.  *See McEuin v. Crown Equip.*
14 *Corp.*, 328 F.3d 1028 (9th Cir. 2003).

15 **D.  Plaintiff's Contentions In This Case.**

16 Plaintiff alleges strict products liability, negligence and breach of warranty claims against
17 Crown under California law.  Plaintiff's strict products liability claims are based on the design of the
18 forklift, Crown's refusal to implement a door or other safety device to protect the operator from the
19 open operator compartment in the event of an accident, Crown's defective braking, floorboard and
20 control systems, and Crown's failure to warn.  Plaintiff's negligence claims are based upon Crown's
21 negligent design of the RC 3000 lift truck, Crown's negligent maintenance of the subject forklift,
22 and Crown's negligent failure to warn.  Plaintiff's breach of warranty claims are based upon
23 Crown's statements regarding the safety of the RC 3000.

24 **E.  The Course Of Discovery In This Case.**

25 Plaintiff first served written discovery in this action on June 18, 2009.  By May 7, 2010,
26 plaintiff served 82 document requests, 25 interrogatories, and 29 requests for admission.  From
27 September 1, 2009 to the present, the parties have engaged in a substantial meet-and-confer effort
28 regarding Crown's discovery responses, as reflected in Attachment A.

Crown took the position that plaintiff was entitled to discovery only on the RC 3000 model with a "safety" device Crown calls an entry bar.  After a lengthy stay of discovery, a court-ordered 30(b)(6) deposition, numerous letter briefs and other briefs, Judge Walker found that plaintiff's requests for discovery regarding all Crown stand-up lift trucks[1] – including the RR, RD and RS models, as well as the predecessor and successor models to the RC 3000 – were within the scope of discovery.  Weltin Decl., Ex. 19.  Crown's meritless stance on the purported differences between these lift trucks and the RC 3000 created significant delay and expense for plaintiff.

Following the Court's January 26, 2011 Order regarding the scope of discovery, Crown eventually agreed to amend its discovery responses, and served supplemental responses on April 21, 2011.  Due to clerical error, Crown served corrected versions of these responses on April 25, 2011.  Like Crown's earlier responses, its supplemental responses do not comply with the Federal Rules of Civil Procedure.

Having conferred with Crown at great length, and faced with the imminent close of discovery in this action, plaintiff is forced to bring the parties' ongoing discovery disputes to a head.

### III.  ARGUMENT

**A.  Crown's Discovery Responses Fail To Comply With The Federal Rules.**

<u>1.  Crown does not respond to plaintiff's requests as written.</u>

In responding to a document request, the response "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Fed. R. Civ. Proc. 34(b)(2)(B).  "An objection to part of a request must specify the part and permit inspection of the rest."  *Id*. at 34(b)(2)(C).  An evasive or incomplete response is treated as a failure to respond.  *Id.* at 37(a)(4).

Crown does not follow this established procedure.  Crown objects to each request *in toto*, and where it does agree to produce documents, it typically narrows the request by identifying one or several documents that it agrees to produce.  In this manner, no <u>categories</u> of documents are

---

[1] Plaintiff believes that the RC, RR, RS and RD models in Judge Walker's order are all the stand-up trucks that Crown produced since 1992, although it is possible Crown has developed new models or hybrid stand-up/sit-downs since then, which are also relevant to plaintiff's claims.  In any event the RC, RR, RD and RS series are the stand-up series that plaintiff believes had been manufactured by Crown at the time of the incident and are the subject of Crown's combined Accident Summary Data.

1  produced, only <u>individual documents</u>.  Plaintiff is left to wonder what other documents within a
2  given category are left out of the production.  Instead of specifying the objectionable portion and
3  producing the rest, Crown specifies the document produced and vaguely withholds the rest under the
4  auspices of uncertain boilerplate objections.  Fed. R. Civ. Proc. 34(b)(2)(C).

   In this manner, plaintiff frequently asks for an orange, and gets an apple.  For example, in
response to a request for "All warnings used by Crown in the past 20 years regarding the possibility
of injury while using a Crown stand-up forklift, including but not limited to on-truck warning
labels[,]" Crown responds with a litany of objections, and a statement that certain warnings will be
produced.  Request No. 2.  Other responses follow the same format, but are even more vague.
Plaintiff's request for all sales and promotional material pertaining to the RC 3000 is met with
objections, and a statement that Crown will produce "additional brochures… and sales materials…"
Request No. 26.  Plaintiff is given no glimpse of what "all warnings" or "all sales and promotional
material" consists of, but is left with what Crown allows plaintiff to have.

   Crown unilaterally narrows discovery in other respects.  In response to a request for, *inter alia*, all reports of "cutting out" and "plugging failures," Crown asserts in its supplemental responses that this would require searching through 2,500 boxes at over 50 locations, and agrees to produce "a Quipware report containing responsive information for all of the stand-up riders at the Costco-Mountain View location, as well as a Fleet Stats report containing responsive information for all stand up riders at all Costco locations."  Request Nos. 29-30.  The FleetStats and QuipWare reports Crown produces, while not produced in the format they are kept or reasonably usable format, are clearly database-derived data and are not retrieved from boxes.  Fed. R. Civ. Proc. 34(b)(2)(E)(i). Crown can obtain this data from these databases for all customers across the country.  There is no basis for Crown to limit its response to the Costco-Mountain View location or to all Costco locations in California.  Crown is spoon-feeding plaintiff its own version of the evidence, and editing out that which is unfavorable or which it simply does not care to produce.

   Crown also repeatedly refers in its responses to a future production of documents (i.e. "Crown… will produce non-privileged documents…").  This manner of response is included in many of Crown's supplemental responses, served five months before the close of discovery.

Notice of Motion and Motion to Compel Further Responses to Written Discovery and to Re-Open Depositions

1  Plaintiff is left to guess when these documents will be produced, or whether they already have been,
2  and cannot close the loop on Crown's production.  These vague references to future productions are
3  improper.  See *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997);
4  *Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009).  Crown must provide definite
5  responses clarifying that all responsive documents have been produced.

6  <u>2.  Crown refuses to produce documents in electronic format, as requested, or to produce documents as they are kept.</u>

8  Where production of documents in native format is requested and no valid objection is
9  raised, those documents should be produced in the format requested.  See, e.g., *Dahl v. Bain Capital*
10  *Partners, LLC*, 655 F. Supp. 2d 146, 150 (D. Mass. 2009); *Treppel v. Biovail Corp.*, 233 F.R.D. 363,
11  374 n.6 (S.D.N.Y. 2000).  If not specified in the request, the documents should be produced in the
12  format kept.  Fed. R. Civ. Proc. 34(b)(2)(E)(i).  As the 2006 Advisory Committee Notes make
13  abundantly clear: "The amendment to Rule 34(b) permits the requesting party to designate the form
14  or forms in which it wants electronically stored information produced."

15  Crown thumbs its nose at the 2006 Amendments to Rule 34.  Aside from a handful of
16  documents, Crown refuses to produce records in electronic format, as requested.  Plaintiff requested
17  Crown's Accident Summary Data in Excel format.  Crown Manager of Product Safety Ron Grisez
18  testified that he keeps the data in Excel spreadsheets.  Crown has produced the Data many times over
19  in paper form, but refuses to produce it in Excel format without any reasonable justification.
20  Plaintiff's expert requires the data in Excel format.  Wiker Decl., ¶¶ 3-6.

21  Plaintiff also requested email.  Crown produced some portion of the responsive email by
22  printing out and producing it in paper form.  As plaintiff advised Crown, this is improper: it is not a
23  production in the form in which the emails are ordinarily maintained, nor is it a reasonably usable
24  form.  See *White v. The Graceland College Ctr. For Prof. Dev. & Lifelong Learning, Inc.*, 586 F.
25  Supp. 2d 1250, 1264 (D. Kan. 2008).  In the last several months Crown produced more email (which
26  was due to be produced on December 23, 2009), but none of the email is in native electronic format.

27  Plaintiff requested all design drawings of the subject lift truck.  According to Crown's
28  Manager of Product Engineering, these documents are kept in NX Unigraphics CAD form.  Crown
instead responds by referring plaintiff to a paper copy of the Service and Parts Manual, which

7

Notice of Motion and Motion to Compel Further Responses to Written Discovery and to Re-Open Depositions

1  contains schematics of the lift truck.  This is wholly inadequate and improper under Rule 34.  The
2  blueprints should be produced in NX format.  This is simply burning a CD.  Wiker Decl., ¶¶ 3-6.
3        Plaintiff requested electronic maintenance records identifying similar problems to those
4  experienced by plaintiff, including plugging failures, cutting out, and coasting.  Crown asserted that
5  no electronic maintenance records existed.  Plaintiff learned of certain electronic maintenance
6  records – apparently called "FleetStats" – only by subpoena to Costco, and learned of still further
7  electronic maintenance records – apparently kept in a system called "QuipWare" – only through
8  depositions of Crown employees.  Crown recently produced what appear to be screenshots of
9  QuipWare, and an unmanipulatable PDF of FleetStats records that pertain only to Costco lift trucks
10 in California, but persists in refusing to produce electronic versions of this evidence.  This is a
11 failure to produce the documents requested in native electronic format, in contravention of Rule 34.
12       Producing this and other information in electronic format allows plaintiff and his experts to
13 analyze and use the data.  Wiker Decl., ¶¶ 3-6.  Parsing thousands of accidents and tens of thousands
14 (or more) of maintenance records by hand is exceedingly difficult and time-consuming, while Crown
15 has fingertip access to this data and uses the data to defend itself at trial.  Viewing design drawings
16 in three-dimensional computer format is vastly superior to a paper copy of a service manual, both for
17 an engineering expert's analysis and for a jury's consideration.  The superiority of electronic email,
18 including metadata, compared with print-outs of emails is beyond dispute, in terms of searchability,
19 manageability, and evidentiary value, among other things. It is like producing hieroglyphics but not
20 the Rosetta Stone.  *Id*.
21       Crown reaps the advantages of maintaining its files electronically, and would use that
22 advantage over plaintiff at trial.  Rule 34 does not permit these tactics.  Plaintiff must have access to
23 evidence requested in electronic format.
24       <u>3.  Crown ignores its duty to produce documents to the extent a request is not overbroad or unduly burdensome.</u>
25
26       Crown has not supported its objections of overbreadth and undue burden.  It is Crown's
27 burden to support these objections.  Fed. R. Civ. Proc. 26(b)(2)(B); *General Elec. Capital Corp. v.*
28 *Lear Corp.*, 215 F.R.D. 637, 641 (D. Kan. 2003).  It is plaintiff's position that Crown has raised this

8
Notice of Motion and Motion to Compel Further Responses to Written Discovery and to Re-Open Depositions

objection spuriously in many instances as a boilerplate objection, as addressed in plaintiff's Separate Statement.

More importantly, an objection based on overbreadth or undue burden does not excuse responding. The responding party must respond – and produce documents – to the extent the request is not overbroad or unduly burdensome. See, e.g., Schwarzer, et al., CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL at 11:1734 (The Rutter Group 2010); *United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007). Crown has utterly failed in this regard in many responses. Instead, as discussed above, Crown will limit its response to a select one or two documents, or will simply refuse to produce any documents based on its overbreadth and burden objections.

**B. Crown Improperly Asserts The Attorney-Client Privilege, And These Objections Must Be Stricken.**

Crown asserts the attorney-client privilege in response to plaintiff's document requests in two ways. First, Crown asserts "General Objections" to all document requests, which includes an assertion of the attorney-client privilege. Second, Crown asserts the privilege in its responses to specific requests.

General objections are ineffective and not to be considered. See, e.g., *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 512-13 (N.D. Iowa 2000). Plaintiff requests that defendant's "General Objections" be stricken.

Crown's subsequent assertions of the attorney-client privilege are unsupported. Crown has not produced a privilege log or identified any document withheld on the grounds of privilege. It flatly asserted that it has not withheld any privileged documents, and thus does not need to produce a privilege log. Weltin Decl., Ex. 20.

If Crown means to assert that documents are withheld as privileged, it must assert the privilege with specificity, identifying those documents that are withheld. Fed. R. Civ. Proc. 26(b)(5)(A)(ii). Despite meeting and conferring extensively with Crown as recently as April 29, 2011 on production of a privilege log, it continues to refuse to specify its claims of privilege after nearly two years of discovery. Crown therefore waived any claim of privilege it may have held.

9

*Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1011 (9th Cir. 2007); *Burlington N. & Santa Fe Ry. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

Crown asserted in correspondence that it is not actually withholding any documents on the basis of privilege, but persists in asserting objections based on privilege. As a result, Crown's objections based on privilege – which Crown claims do not actually apply to any documents in this case – must be stricken from its responses.

**C. Crown's Search For And Production Of Documents Is Inadequate And Improper.**

Crown is obligated to first ensure that all relevant information is preserved, and then to collect and review that information. *In re Grand Casinos Securities Lit.*, 988 F. Supp. 1270, 1272-73 (D. Minn. 1997); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Securities, LLC*, 2010 U.S. Dist. LEXIS 4546 at 10-13 (S.D.N.Y. 2010). Document production must be managed and monitored; operations-level employees cannot be left to determine what is relevant and responsive. *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1194 (D. Utah 2009).

In this case, Crown's effort to produce documents is inadequate. Many documents responsive to requests propounded nearly two years ago have been produced in the last few months. Crown's "rolling" productions, as it boldly calls its production, are inappropriate and prejudicial to plaintiff. "Unilaterally deciding to conduct a cursory initial search to be followed by 'rolling' productions from subsequent, more thorough, searches is not an acceptable option… Rule 34 guarantees that the requesting party will receive, concurrently with the response, all documents reasonably available." *Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009) (citations omitted). The subsequent documents were only finally produced because of plaintiff's counsel's persistence. Many more documents responsive to these requests remain to be produced.

Crown's efforts to find documents in order to produce them is also inadequate. Crown's Manager of Product Safety and Manager of Engineering testified they were not asked to preserve any documents in this case. Crown's counsel has asserted that documents – such as electronic maintenance records – do not exist, to be subsequently proved wrong due only to plaintiff's subpoenas. Crown also represented that maintenance workers do not have access to maintenance training records, when its maintenance workers flat-out contradicted this representation. Weltin

10

Decl., Ex. 22 (Depo. Supnet at 24:8-25:9), 23 (Depo. Hyslop at 57:2-11).  This is a negligence maintenance case as well as a product liability case.  These training modules must be produced and the techicians' depositions reopened.

Since April, Crown has produced voluminous sets of documents responsive to requests propounded over a year ago.  No explanation is offered for this delay.  A set of 243 pages of email directly relevant to plaintiff's claims was produced on July 7, 2011, with discovery set to close in September.  These were all due to be produced by Crown on December 23, 2009; plaintiff obtained some of these emails from Costco via subpoena, but 95 pages of these emails were never previously produced.  Weltin Decl., ¶ 32, Ex. 31.  Other evidence of Crown's accident investigations was produced in May.  Crown's failure to timely search for and produce documents puts plaintiff into a scramble.  The delay has prejudiced plaintiff's ability to take effective depositions and to otherwise pursue discovery in this case.  Plaintiff can only assume this to be Crown's considered tactic.  It is gaming of the discovery process, and it should not be countenanced.

## IV.  CONCLUSION

Only by an extensive meet-and-confer, substantial self-help in the form of third party subpoenas and other efforts to obtain documents, and deposing Crown witnesses did plaintiff learn that many documents responsive to plaintiff's requests exist and have not been produced.  Only by persistence has plaintiff been able to stir Crown to even attempt to look for many relevant, discoverable documents requested by plaintiff.  Plaintiff disproved many of Crown's contentions in the meet-and-confer process, and repeatedly called Crown's attention to its failure to comply with its discovery obligations, but meets with continued obstinacy and delay.

Plaintiff respectfully requests that the Court order Crown to serve further responses to the written discovery at issue without objections by a date certain, including producing further responsive documents in the format they are kept; order Crown's objections based on privilege

//
//
//
//

11
Notice of Motion and Motion to Compel Further Responses to Written Discovery and to Re-Open Depositions

1 stricken; and permit plaintiff's counsel to re-take the depositions of Crown witnesses regarding
2 issues raised in documents that were produced well after the depositions at Crown's expense.
3 Dated: July 29, 2011                                                                 WELTIN • STREB & WELTIN LLP

                                                                                        /s/
                                                                                        Philip R. Weltin
                                                                                        Daniel R. Weltin
                                                                                        Attorneys for Plaintiff

# ATTACHMENT A

ATTACHMENT A

| Date | Item |
|---|---|
| June 18, 2009 | Plaintiff propounds Special Interrogatories, Set One and Request for Production of Documents, Set One. |
| August 13, 2009 | Crown responds to plaintiff's Special Interrogatories, Set One and Request for Production of Documents, Set One. |
| September 1, 2009 | Plaintiff sends a six-page meet-and-confer letter to defendant regarding its responses to plaintiff's Special Interrogatories, Set One and Request for Production of Documents, Set One. |
| October 5, 2009 | Defendant sends a seven-page meet-and-confer letter to plaintiff regarding defendant's responses to plaintiff's Special Interrogatories, Set One and Request for Production of Documents, Set One. |
| December 5, 2009 | The parties engage in a mediation session. |
| November 20, 2009 | Plaintiff propounds Request for Production of Documents, Set Two. |
| December 23, 2009 | Crown responds to plaintiff's Request for Production of Documents, Set Two. |
| March 1, 2010 | Plaintiff sends a seven-page meet-and-confer letter to defendant regarding its responses to plaintiff's Special Interrogatories, Set One and Request for Production of Documents, Set One. |
| March 1, 2010 | Plaintiff sends a three-page meet-and-confer letter to defendant regarding its responses to plaintiff's Request for Production of Documents, Set Two. |
| March 13, 2010 | Plaintiff called defendant on March 10, 2010 regarding its responses to plaintiff's meet-and-confer letters.  On March 13, 2010 defense counsel clarified that it was in trial, and anticipated responding to plaintiff's letters in the week of April 5, 2010. |
| April 9, 2010 | Plaintiff propounds Requests for Admission, Set One, Special Interrogatories, Set Two and Request for Production of Documents, Set Three. |
| April 19, 2010 | Plaintiff's counsel and defense counsel confer on the telephone regarding various discovery issues, including Crown's production of evidence regarding the RR and RD series of lift trucks. |
| April 23, 2010 | Defendant sends plaintiff a ten-page meet-and-confer letter regarding defendant's responses to plaintiff's Special Interrogatories, Set One and Request for Production of Documents, Sets One and Two. |
| May 3, 2010 | Plaintiff sent defendant a nine-page meet-and-confer letter regarding defendant's responses to plaintiff's Special Interrogatories, Set One and Request for Production of Documents, Sets One and Two. |
| May 7, 2010 | Plaintiff serves Request for Production of Documents, Set Four on defendant. |
| May 10, 2010 | Defendant responds to plaintiff's Request for Production of Documents (Set Three), Special Interrogatories (Set Two), and Request for Admission (Set One). |
| May 13, 2010 | Defendant sends plaintiff an eight-page meet-and-confer letter regarding defendant's responses to plaintiff's Special Interrogatories, Set One and Request for Production of Documents, Sets One and Two. |
| May 13, | Counsel for plaintiff and defendant confer over the telephone regarding |

ATTACHMENT A

| | |
|---|---|
| 2010 | defendant's responses to plaintiff's Special Interrogatories, Requests for Admission, and Requests for Production of Documents.  Plaintiff's counsel sends a 10-page confirming letter, which defense counsel disavowed on May 21, 2010 as accurately reflecting the conversation. |
| May 14, 2010 | Plaintiff submits a two-page letter brief to the Court regarding certain discovery matters in dispute, particularly discovery regarding predecessor, successor and similar RR, RD and RS lift trucks. |
| May 18, 2010 | Defendant submits a two-page letter brief to the Court, responding to plaintiff's letter. |
| May 19, 2010 | Plaintiff sends a three-page meet-and-confer letter to defendant regarding outstanding discovery issues. |
| May 20, 2010 | Plaintiff submits a second two-page letter brief to the Court, responding to new issues raised in defendant's letter brief. |
| May 21, 2010 | Defendant sends a two-page meet-and-confer letter to plaintiff and confirms that it will amend certain discovery responses, review other responses, and look into an issue with the sequencing of the Bates numbers of Crown's document production. |
| May 21, 2010 | Defendant submits a second two-page letter brief to the Court regarding the parties' discovery disputes. |
| May 26, 2010 | A telephonic hearing regarding the parties' discovery disputes is conducted by the Court.  The Court ordered the parties to submit proposed FRCP 30(b)(6) information. |
| June 2, 2010 | Plaintiff sends defendant a four-page meet-and-confer letter in an effort to narrow the matters in dispute. |
| June 10, 2010 | Defendant responds to plaintiff's Request for Production of Documents, Set Four. |
| June 14, 2010 | Defendant sends plaintiff a brief meet-and-confer email, stating that Crown will not amend those discovery responses it agreed to amend until the Court rules on the scope of discovery. |
| June 15, 2010 | Plaintiff sends a brief email to defendant regarding production of a spreadsheet in native electronic format. |
| June 16, 2010 | Defendant responds to plaintiff regarding production of a spreadsheet in native electronic format, confirming that counsel is looking into whether defendant will agree to produce the spreadsheet in native electronic format. |
| June 16, 2010 | Defendant sends plaintiff a two-page meet-and-confer letter in response to plaintiff's June 2, 2010 letter, confirming that it will not amend those discovery responses it agreed to amend until the Court rules on the scope of discovery. |
| July 6, 2010 | Plaintiff sends defendant a four-page meet-and-confer letter regarding defendant's responses to Request for Production of Documents, Set Four. |
| July 7, 2010 | The parties confer via email regarding various discovery issues. |
| July 8, 2010 | Plaintiff sends defendant a meet-and-confer email regarding various discovery issues. |
| July 9, 2010 | Defendant sends plaintiff a meet-and-confer email regarding various discovery issues. |

ATTACHMENT A

| | |
|---|---|
| July 19, 2010 | Plaintiff submits a third two-page letter brief to the Court regarding pending discovery disputes. |
| July 19, 2010 | Plaintiff sends a two-page meet-and-confer letter to defendant regarding numerous outstanding discovery issues. |
| July 20, 2010 | Defendant submits a third two-page letter brief to the Court regarding pending discovery disputes. |
| July 20, 2010 | Defendant sends a three-page meet-and-confer letter to plaintiff responding to plaintiff's July 19, 2010 meet-and-confer letter. |
| July 27, 2010 | Plaintiff sends a two-page meet-and-confer letter to defendant regarding various discovery issues. |
| July 28, 2010 | Counsel for the parties confer in person regarding various discovery issues following the deposition of Crown witness Ron Brewer. |
| July 29, 2010 | Plaintiff sends a two-page meet-and-confer letter to defendant regarding narrowing discovery issues. |
| July 30, 2010 | Defendant responds to plaintiff's July 29, 2010 meet-and-confer letter via email. |
| August 11, 2010 | Plaintiff submits a fourth two-page letter brief to the Court regarding pending discovery disputes. |
| August 12, 2010 | Defendant submits a three-page letter brief with 34 pages of attachments to the Court regarding pending discovery disputes. |
| August 13, 2010 | The Court stays discovery and orders the parties to submit proposed FRCP 30(b)(6) deposition notices with 10-page accompanying briefs by September 2, 2010. |
| September 2, 2010 | The parties submit proposals to the Court regarding the scope of a proposed FRCP 30(b)(6) deposition. |
| September 23, 2010 | A further case management conference is held to address discovery issues. The Court orders all discovery stayed and orders a FRCP 30(b)(6) deposition of Crown regarding engineering and design similarities, braking systems and accident histories of Crown RC, RD, RS and RR designated models. The Court further ordered the parties to submit proposals for completion of discovery within 30 days of completion of the FRCP 30(b)(6) deposition. |
| October 6, 2010 | The parties exchanged emails regarding the scope of discovery and other issues. |
| December 30, 2010 | Plaintiff sends a three-page meet-and-confer letter to defendant requesting, among other things, that defendant address production of missing documents. |
| January 10, 2011 | Following completion of the Court-ordered 30(b)(6) deposition, the parties submit competing proposals for the completion of discovery. |
| January 26, 2011 | The Court orders that plaintiff is entitled to discovery regarding the RC, RD, RR and RS model lift trucks from 1992 to the present. |
| February 10, 2011 | Plaintiff sends a one-page meet-and-confer letter to defendant requesting that Crown provide final responses to outstanding written discovery, in accordance with the Court's January 26, 2011 ruling regarding the scope of discovery and Crown's previous agreement to amend various responses after the Court ruled on the scope of discovery. |

ATTACHMENT A

| | |
|---|---|
| February 18, 2011 | Defendant sends a two-page meet-and-confer letter to plaintiff requesting that plaintiff further confer regarding defendant's discovery responses. |
| February 21, 2011 | The parties exchange meet-and-confer emails regarding production of documents. |
| March 25, 2011 | Plaintiff sends a draft separate statement to defendant outlining plaintiff's outstanding issues with defendant's discovery responses, with a cover letter requesting Crown's final position by March 31, 2011. |
| March 28, 2011 | Defendant sends a two-page meet-and-confer letter to plaintiff regarding the draft separate statement plaintiff sent to defendant on March 25, 2011, indicating that defendant would respond as soon as possible. |
| March 28, 2011 | Counsel for plaintiff and defendant confer on the phone regarding various outstanding discovery issues, including plaintiff's request to take more than 10 depositions. Plaintiff confirms this conversation in a March 30, 2011 letter. |
| April 18, 2011 | Counsel for defendant sends plaintiff an email indicating that defendant will produce further responses to certain written discovery by April 21, 2011. |
| April 21, 2011 | Crown serves amended responses to plaintiff's written discovery. |
| April 25, 2011 | Defendant serves corrected supplemental responses to plaintiff's written discovery, correcting clerical errors in defendant's April 21, 2011 responses. |
| April 29, 2011 | Plaintiff and defendant exchange emails discussing privilege log and deposition notices. |
| May 6, 2011 | Defendant sends a one-page letter to plaintiff stating supplemental production will be ready May 13, 2011 with the exception of Request No. 77. |
| May 12, 2011 | Crown serves additional documents responsive to plaintiff's document requests, including what appear to be electronic maintenance records for Costco lift trucks at all California locations. |
| May 12, 2011 | Plaintiff and defendant exchange emails regarding meet-and-confer issues and the depositions of Deus and Magato. |